# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KYRELL HUTCHERSON,

          Plaintiff,

    vs.

PENNSYLVANIA INTERSCHOLASTIC
ATHLETIC ASSOCIATION, individually
and t/d/b/a WESTERN PENNSYLVANIA
INTERSCHOLASTIC ATHLETIC
LEAGUE, BUCHANAN INGERSOLL &
ROONEY, PC, MCNEES WALLACE &
NURICK, AND KISKI AREA SCHOOL
DISTRICT

          Defendants.

No. 2:23-CV-1785

The Honorable Cathy Bissoon

**ELECTRONICALLY FILED**

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Kyrell Hutcherson, by and through his attorneys, George R. Farneth II, Esquire and The Farneth Law Group, LLC, and files this Amended Complaint in Civil Action, averring as follows:

1.    Plaintiff, Kyrell Hutcherson ("Plaintiff"), is an adult individual who, at all times pertinent hereto, resided in Western Pennsylvania.

2.    Defendant, Pennsylvania Interscholastic Athletic Association, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League ("PIAA"), is believed to be a non-profit corporation which was organized and exists under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 550 Gettysburg Road, Mechanicsburg, Cumberland County, Pennsylvania 17055, but which regularly conducted business in Allegheny County, Pennsylvania.

3.    Defendant, Buchanon Ingersoll & Rooney, PC ("BIR") is a Pennsylvania

professional business corporation operating as a law firm with a registered address of 501 Grant Street, Suite 200, Pittsburgh, PA 15219.

4.     Defendant, McNees, Wallace & Nurick, LLC ("MWN") (collectively, MWN, BIR, and PIAA shall hereinafter be referred to as "Defendants") is a Pennsylvania restricted professional limited liability company with a registered address of 100 Pine Street, PO Box 1166 and a physical office location at One Oxford Centre, 301 Grant Street, Suite 1100, Pittsburgh, PA 15219.

5.     At all times pertinent hereto, PIAA, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League, was acting by and through its authorized agents, servants, employees, and representatives, including but not limited to its Executive Director, Dr. Robert Lombardi ("Lombardi"), Robert Hartmann, and multiple attorneys from the law firms of BIR and MWN, including but not limited to Brian H. Simmons, Esquire, Alan R. Boynton, and Carol Steinour Young, Esquire, all of whom were then and there acting within the course and scope of their employment, apparent employment, and/or agency relationship with and in furtherance of the business operations of PIAA and WPIAL.

6.     The attorneys referenced in the previous paragraph and at least one designated representative each from BIR and MWN are and will be integral witnesses who will be required to testify at the trial of this case and, therefore, Rule 3.7 of the Pennsylvania Rules of Professional Conduct precludes them from representing any of the Defendants in this litigation.

7.     PIAA, BIR, and MWN will sometimes hereinafter be collectively referred to as "Defendants."

## JURISDICTION AND VENUE

8.     This action is brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d., *et. seq.*

9.     This Honorable Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

10.     This Honorable Court has jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the actions, omissions, and harm complained of herein all occurred within and each of the claims set forth herein arose in the Western District of Pennsylvania.

## STATEMENT OF FACTS

12.     PIAA is a voluntary membership organization composed of most of the public and private high schools in Pennsylvania that has the purpose and function of developing and enforcing rules, regulations, policies, procedures, and guidelines governing interscholastic athletic competition among and between the schools that choose to join PIAA.

13.     PIAA divides its member schools into 12 geographical districts for the purpose of state championship competition.

14.     One of those 12 geographical districts is the Western Pennsylvania Interscholastic Athletic League ("WPIAL"), which is a fictitious name/entity that PIAA trades and does business as and which maintains its principal place of business at 615 Iron City Drive, Suite 300, Pittsburgh, Allegheny County, Pennsylvania 15205.

15.     PIAA is governed by a constitution adopted and periodically amended by its member schools, and Bylaws adopted and amended by its Board of Directors which include a

series of rules that govern the eligibility of students to participate in interscholastic athletic competition against other PIAA member schools ("Rules").

16.     Article VI of PIAA's Bylaws, entitled "Transfers Residence and Recruiting," determines a student's eligibility to participate in athletics following a transfer to a different school district.

17.     Article VI, Section 5 of the Bylaws, entitled "Review of Eligibility," states generally that if a transfer was "materially motivated in some way by an athletic purpose" and/or there was a "reasonable likelihood that the transfer was materially motivated in some way by an athletic purpose," then the student-athlete would be ineligible for a period of one year from the date of the Transfer. 2020-2021 PIAA Bylaws, Article VI, section 5C (hereinafter "Section 5").

18.     If a transfer was not motivated by an athletic purpose, then Article VI, Section 2 of the Bylaws, entitled "Eligibility of Transfers" is implicated, which states generally that, "with few exceptions" if a student athlete transfers schools, then he or she, while eligible for the regular season, is not eligible for any post-season tournament.

19.     Article VI, Section 2B of the Bylaws provides that "if a student transfers after participating in a sport in their 10th grade year, or thereafter, and following completion of such season transfers to another school, said student is ineligible for participation in the post-season...in that same sport for the subsequent school year."

20.     Section 2B further notes that all tendered reasons will be considered on a case-by- case basis.

21.     Article VI, Section 2C of the Bylaws provides:

"A district committee may waive this period of ineligibility upon demonstration by the student that the transfer was necessitated by exceptional

and unusual circumstances beyond the reasonable control of the student's family. For purposes of this provision, the following reasons WILL be deemed sufficient to meet this standard:

- change of residence necessitated by a change in employment;
…
- an involuntary substantial change in financial condition and resources that compels withdrawal from a school;
…
All other tendered reason will be considered by the District Committee on case-by-case basis."

22.     Therefore, if the evidence establishes that the transfer was due to "exceptional or unusual circumstances beyond the reasonable control" of the family, or due to a change residence necessitated by a change in employment, then playoff eligibility may be restored.

23.     For the reasons set forth herein and that will be further developed during discovery, Plaintiff believes PIAA, WPIAL, and its member schools have historically, and particularly in the instant matter, interpreted, applied, and enforced PIAA Bylaws and the Rules arbitrarily, capriciously, and disparately, generally, and specifically **based on the student athlete's race**.

24.     Ironically, despite its conduct as averred herein, as of the filing of this Complaint, BRI has been shortlisted for "Chambers Diversity and Inclusion – Outstanding Firm Award" which recognizes firms for demonstrating and implementing an inclusive work environment.

25.     At the time of the events in question, Plaintiff was a minor.

26.     Plaintiff is an African American and Defendants' individual and collective actions and omissions were intentional, reckless, and/or negligent based on Plaintiff's race.

27.     In fact, Defendants have engaged in a continuing and ongoing course of conduct that constitutes racial discrimination against Plaintiff that only, and apparently

finally, ended on May 23, 2022.

28.     The Kiski Area School District ("Kiski") is a large, suburban/rural public school district that encompasses nine municipalities in Armstrong and Westmoreland Counties those being Allegheny Township, Avonmore Borough, Bell Township, East Vandergrift Borough, Hyde Park Borough, Oklahoma Borough, Vandergrift Borough, Washington Township, and Parks Township.

29.     According to the latest U.S. Census information, the racial demographics of the municipalities that comprise Kiski are each over 95% white, and some are 99% or more white.

30.     Plaintiff attended Kiski from grades 8 through 10 where he played football and basketball.

31.     At the time of the events in question, Plaintiff's father, Detrell Hutcherson ("Father") was his sole source of financial support.

32.     During the summer of 2020, Plaintiff and Father relocated from their residence in Vandergrift to an apartment in Warrendale which is in the North Allegheny School District ("NASD") for which Father signed a lease that was dated July 1, 2020 ("Relocation").

33.     The apartment to which Plaintiff and Father relocated is very close to Father's place of employment with the United States Post Office ("USPS") in Warrendale, Pennsylvania.

34.     Plaintiff enrolled in the NASD on June 29, 2020.

35.     Prior to the Relocation, Father had been experiencing difficulties commuting

from Vandergrift to his job in Warrendale which required a 39-mile commute each way, and he was on the verge of losing his sole means of transportation.

36.     On June 27, 2020 Father participated in a disciplinary hearing at work in which his supervisor and union representative advised him to move closer to work or be on the path toward termination because of tardiness and attendance issues which stemmed from his long commute.

37.     Before the disciplinary hearing, Father had transferred into a new position within the USPS that changed his status from temporary to permanent employee, awarded him a significant salary increase, and gave him the opportunity to work more hours, including overtime.

38.     Because of the Relocation, NASD requested a decision from WPIAL regarding Plaintiff's athletic eligibility.

39.     In its request ("Request"), NASD advised WPIAL that the Relocation was "necessitated by exceptional and unusual circumstance(s) beyond the reasonable control" of Plaintiff and his family due to a "change of residence necessitated by a change of employment" and "other" reasons.

40.     Attached to the Request was a copy of Father's lease, employment verification, Plaintiff's education records, two letters from Father's employer summarizing his tardiness and the employer's advice that Father move closer to work or face disciplinary action, proof of Father's change of address on his driver's license, and Father's resignation from an assistant coaching position he held at Kiski.

41.     Ignoring the indisputable evidence provided to them, PIAA - in an arbitrary

and capricious fashion based solely on Plaintiff's race – initiated unnecessary administrative hearings (the "Hearings").

42.     The Hearings were initiated and scheduled by PIAA acting by and through WPIAL.

43.     Despite prior decisions that declared white student athletes eligible to participate in athletics under similar, if not identical, circumstances, in the face of incontrovertible evidence that the transfer was solely for the economic means of Plaintiff and Father submitted with the Request, and without any evidence that the Relocation was "materially motivated in some way by an athletic purpose" and/or there was a "reasonable likelihood that the transfer was materially motivated in some way by an athletic purpose," WPIAL voted to declare Plaintiff ineligible to participate in basketball for one year from the date of transfer.

44.     WPIAL, despite evidence submitted with the Request to the contrary, found that there was a reasonable likelihood that Plaintiff's transfer was materially motivated in some way by an athletic purpose related to basketball in violation of Article VI.5.C of the PIAA Bylaws as it outlined in a written decision issued after the second hearing.  A copy of that decision, which is in the possession of all parties, is incorporated herein by reference.

45.     WPIAL did not address Plaintiff's eligibility for postseason basketball play.

46.     When WPIAL issued its decision, it reasonably knew or should have known that an appeal would be filed on Plaintiff's behalf and legal proceedings would continue.

47.     NASD appealed WPIAL's decision to PIAA.

48.     PIAA held a hearing on October 7, 2020 that was attended by representatives

from Kiski and NASD, as well as Plaintiff and Father who were represented by counsel.

49.     The October 7, 2020 hearing, which was initiated, and scheduled by PIAA, constitutes a continuation of legal proceedings.

50.     Prior to the October 7, 2020 hearing, and at all times thereafter, PIAA had the unilateral authority and power to overrule WPIAL's decision, but it unfortunately and callously failed to do so, despite having no evidence to support WPIAL's decision.

51.     Prior to the start of the hearing, the parties agreed that the PIAA would consider Plaintiff's regular season and postseason eligibility at the appeal hearing ("Hearing").

52.     The transcript of the Hearing ("Transcript"), which is 73 pages long, reveals that Kiski withdrew its initial objection to Plaintiff's transfer based on the lack of evidence that the Relocation was motivated by athletic intent.

53.     The Transcript also reveals that, during the Hearing, PIAA considered Plaintiff's postseason eligibility by reviewing documents already submitted and through two pages of testimony and argument.

54.     After adjourning to executive session for 16 minutes to deliberate on both issues, PIAA voted to restore Plaintiff's eligibility for regular season basketball, and to deny Plaintiff's eligibility for postseason basketball and football.

55.     PIAA then issued a written decision dated October 9, 2020 ("Decision") in which it summarized the Hearing and its findings.

56.     In the Decision, Lombardi, on behalf of PIAA, stated that "[a] separate review of the testimony and evidence resulted in a determination that [Plaintiff] did not qualify for

a waiver of his postseason ineligibility in the sports of football and basketball during the 2020-2021 school year."

57.    PIAA concluded, based on its analysis of Article VI.2.C of the PIAA Bylaws, that it "may waive the restriction on post season eligibility only if the student demonstrates that the transfer was necessitated by exceptional and unusual circumstances beyond the reasonable control of the student."

58.    PIAA also concluded that "the circumstances must be such that, for reasons beyond his or her control, the student effectively had no choice but to transfer."

59.    PIAA further found that the receiving district [NASD] "sought to have postseason eligibility restored for [student] solely on the basis that the move into that school district would satisfy the acceptable standard of a 'change in residence necessitated by a change in employment.'"

60.    PIAA found, however, "there was no 'change in employment,' but instead a change of residence to better accommodate [Father's] current USPS employment status."

61.    PIAA determined that it would not deviate from the very limited reasons for which a waiver might be granted.

62.    PIAA went on to make the absurd conclusion that, "[p]erhaps more importantly, considering the individualized circumstances presented, the [PIAA] determined that while the change in residence may have been desirable for [Father], it was not a necessity nor compelled."

63.    PIAA found, without evidence to support its conclusion, that there were "certainly other means" by which Father could have addressed his tardiness concerns.

64.     PIAA further found that "[w]aivers are only permitted for new and highly unusual circumstances that are beyond the family's control.  This did not meet the standard."

65.     NASD asked PIAA to reconsider the Decision which it declined to do.

66.     When PIAA issued the Decision and refused to reconsider same, it reasonably knew or should have known that a continuation of the legal proceedings would ensue.

67.     Plaintiff sought review of the Decision by initiating a lawsuit in the Court of Common Pleas of Allegheny County, Pennsylvania at GD No. 20-011915 ("Lawsuit").

68.     The trial court held hearings on December 10, 2020 and December 17, 2020 during which it heard evidence and argument on Plaintiff's request for a preliminary injunction.

69.     In an order dated December 17, 2020 Plaintiff's request for a preliminary injunction was denied on the basis that "[t]he loss of an opportunity to play interscholastic athletics for a potential playoff season does not constitute irreparable harm."

70.     The trial court ordered that a final hearing on the permanent injunction take place on January 13, 2021.

71.     The parties stipulated that they would not call any additional witnesses.

72.     After the parties presented arguments on January 13, 2021, the trial court, noting that the granting of a permanent injunction does not require a showing of irreparable harm, granted Plaintiff's request for a permanent injunction, stating that Plaintiff "is hereby granted full and complete eligibility to participate in the post season and/or any WPIAL and/or PIAA playoff tournament for the 2020-2021 basketball season."

73.     Upon learning that a permanent injunction had been granted, and in retaliation

for suffering a complete and absolute defeat at the trial court level, PIAA notified NASD that although Plaintiff was now eligible to play in the postseason, if the trial court's decision was reversed on appeal, NASD would be subject to penalties under Article XIII.10 of PIAA Bylaws, which could require NASD to forfeit any postseason games in which Plaintiff participated, commonly known as the "restitution rule."

74.     In so notifying NASD, PIAA specifically intended to retaliate against Plaintiff for its loss in the trial court, and to intimidate and coerce NASD into preventing Plaintiff from participating in the postseason.

75.     Despite PIAA's retaliatory, intimidation, and coercion tactics, NASD allowed Plaintiff to play in two postseason games, the first of which NASD won and the second of which NASD lost.

76.     The trial court, in its analysis of the case, noted the Pennsylvania Supreme Court's holding in *Harrisburg School District v. Pennsylvania Interscholastic Athletic Association*, 309 A. 2d 353, 357 (Pa. 1973) that established "the general rule with respect to high school athletic associations, insofar as it has been enunciated, is one of judicial non-interference unless the action complained of is fraudulent, an invasion of property or pecuniary rights, or capricious or arbitrary discrimination."

77.     The trial court explained that an action is capricious if it reflects "the willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge."

78.     The trial court further explained that an action is arbitrary when the conduct is "based on random or convenient selection of choice rather that of reason or nature."

79.     The trial court then reviewed case law involving PIAA decisions to further define what constituted arbitrary and capricious discrimination and found numerous examples of arbitrary and capricious decision-making on the part of PIAA that were cited by the trial court in its opinion.

80.     The trial court then reviewed the relevant PIAA Bylaws and the record before the PIAA to determine if the decision was arbitrary and capricious discrimination.

81.     The trial court observed that it was clear from the PIAA hearing that the "primary, if not sole" issue to be considered was Article VI.5 governing transfer for athletic purposes (the Section 5 issue).

82.     Contrary to PIAA's farcical contention that there was "extensive discussion" on Father's employment during the Hearing, the trial court held "that simply is not the case."

83.     On February 2, 2021 the trial court issued its opinion and order in which it found, " a decision by a body which considers only approximately two pages of testimony from a[n] 80+ page hearing transcript, rendered in some period of time that is something less than 16 minutes (the court- can only assume there was much more deliberation on the part of the case that took 80 pages worth of testimony), that decides the postseason eligibility of [Plaintiff] is, as a matter of law, arbitrary and capricious discrimination." A copy of that opinion, which is in the possession of all parties, is incorporated herein by reference.

84.     The trial court also found that PIAA's denial of Plaintiff's request for reconsideration further compounded "the arbitrary and capricious nature of the PIAA's decision," "especially considering [the PIAA's Chair's] suggestion at the hearing that no additional evidence be accepted on the Section 2 issue," the PIAA's unwillingness to

consider new information about Father's employment "that is absolutely germane to the issues in the case" was further evidence of the arbitrary and capricious nature of the decision-making process.

85.     The trial court held "[t]he ultimate issue in the case—the reason for [Father's] change in residence—has not been explored in detail by the PIAA up to this point, even though that was the reason set forth in the original transfer papers."

86.     The trial court found Father's testimony credible about his commute, change in position, change in salary, opportunity for increased overtime, loss of the use of his grandfather's vehicle, and recommendations from his employer and union to move closer to avoid further disciplinary action for tardiness.

87.     The trial court then held that Plaintiff and Father presented sufficient evidence to demonstrate that their change in residence "falls within the exceptions laid out in Article VI, Section 2C, as an 'exceptional and unusual circumstance beyond the reasonable control of the student's family,'" based on a change of residence necessitated by a change of employment and involuntary change in financial conditions that compel a withdrawal from school.

88.     Consequently, the trial court found "[S]tudent has demonstrated the Section 2C exception which would allow him to be eligible for the 2021 post season basketball tournament."

89.     The trial court unequivocally concluded that because the PIAA's decision was arbitrary and capricious discrimination, Plaintiff's basketball postseason eligibility "must be reversed" quickly, as the postseason was due to begin in a matter of weeks.

90.     Plaintiff believes that had he not been African American, PIAA would not have made such an arbitrary and capricious decision.

91.     Instead of accepting the trial court's finding that it had engaged in arbitrary and capricious discrimination as to Plaintiff, PIAA elected to appeal the Trial Court's decision to the Commonwealth Court which constituted a perpetuation of the legal proceedings that WPIAL started by and through the hearings it held and the decision it issued.

92.     Plaintiff believes that Defendants' appeal of the Trial Court's decision to the Commonwealth Court was motivated by its goal of racially discriminating against minorities and punishing those who challenge the authority of the PIAA and WPIAL.

93.     In its appeal, and against decades of overwhelming legal precedent, PIAA argued that the trial court erred as a matter of law when it substituted its judgment for that of the PIAA and ruled that the PIAA's decision constituted arbitrary and capricious discrimination, and in granting Plaintiff a permanent injunction.

94.     On April 21, 2022, the Commonwealth Court issued its decision in a Memorandum Opinion ("Opinion") in which it affirmed, in its entirety, the trial court's decision.  A copy of the Opinion is attached hereto as Exhibit A and is incorporated herein by reference.

95.     PIAA did not appeal the Commonwealth Court's decision within the ensuing thirty days.

96.     Therefore, as of May 23, 2022[1] the Trial Court's decision became final.

---

[1] Because May 21, 2022 was a Saturday, PIAA would have had until the following Monday to file its appeal.

97.     Because Plaintiff would not have had any claims to bring had the Commonwealth Court overturned the Trial Court's decision, the claims Plaintiff has brought and the damages he is seeking in this lawsuit did not accrue until May 23, 2023 and, therefore, they could not have been brought as part of the previous litigation as Defendants contend.

98.     The hearings that WPIAL and PIAA initiated and perpetuated, in which both Defendants engaged in arbitrary and capricious discrimination of Plaintiff, was tantamount to initiating and/or constituted litigation, as was PIAA's appeal to the Commonwealth Court.

99.     PIAA's initiation and perpetuation of their arbitrary and capricious discrimination of Plaintiff was intentional, reckless, and negligent conduct that forced Plaintiff to retain counsel.

100.     Plaintiff believes that, as a result of its arbitrary and capricious discrimination of Plaintiff and other intentional, reckless, and negligent conduct related to Plaintiff's race, and which began with WPIAL's hearings and written decision and continued through the conclusion of PIAA's appeal to the Commonwealth Court, PIAA individually and/or through WPIAL incurred hundreds of thousands of dollars in attorneys' fees.

101.     As a sole, direct, proximate, factual, and legal result of PIAA and WPIAL's arbitrary and capricious discrimination of Plaintiff and Defendants' other illegal conduct as set forth herein, Plaintiff has suffered and/or is entitled to compensation for the following severe, serious, and potentially permanent injuries, damages, losses, and harm:

      a.    He has suffered and, in the future, will suffer great pain, suffering, inconvenience, embarrassment, and mental anguish (all counts except Count I);

      b.    He was illegally denied the right to participate in high school athletics;

    c.      Reasonable attorneys' fees and costs commensurate with the attorneys' fees and costs that were incurred by PIAA and WPIAL;

    d.      Other compensable damages and losses as provided by Title VI of the Civil Rights Act of 1964 and under the Spending Clause legislation; and

    e.      All other pecuniary and monetary losses.

102.     At all times pertinent hereto, Defendants knew and/or should have known that Plaintiff would suffer the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above if they proceeded in the manner they did.

103.     Under the circumstances, the conduct of Defendants as aforesaid warrants the imposition of punitive damages in favor of Plaintiff and against Defendants.

104.     Defendants' conduct is not protected by, and Defendants are not entitled to any type of immunity.

## COUNT I

### PLAINTIFF vs DEFEMDANT, PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INDIVIDUALLY AND T/D/B/A WESTERN PENNSYLVANIA INTERSCHOLASTIC ATHLETIC LEAGUE

### VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

105.     Plaintiff incorporates herein by reference as through fully set forth at length paragraphs 1 through 104 above.

106.     As an African American, Plaintiff was a member of a protected class.

107.     At all times pertinent hereto, Plaintiff qualified for and was entitled to play high school athletics.

108.     For the reasons set forth herein, Plaintiff suffered an adverse action and other consequences as a result of PIAA and WPIAL's arbitrary and capricious decisions, their disparate application of PIAA Bylaws, and their discrimination of Plaintiff.

109.    Not only did the adverse action and consequences occur under circumstances that give rise to an inference of discrimination, but they were judicially determined to be intentionally discriminatory.

110.    As detailed above, Plaintiff was discriminated against on the basis of his race in the arbitrary and capricious decisions made by PIAA and WPIAL.

111.    BIR and MWN were the attorneys for and represented PIAA and WPIAL throughout the litigation referenced herein and, in the process, they championed PIAA and WPIAL's arbitrary and capricious decisions, their disparate application of PIAA Bylaws, and their discrimination of Plaintiff all in an effort to bill and collect outrageous amounts of attorneys' fees and costs which they did.

112.    PIAA and WPIAL's arbitrary and capricious decisions would not have been made had Plaintiff been white.

113.    Plaintiff believes white players in similar circumstances as Plaintiff have been granted the very waiver Plaintiff was denied.

114.    Title VI of the Civil Rights Act of 1964 prohibits discrimination based on "race, color, or national origin…under any program or activity receiving Federal financial assistance." 42 USC § 2000d.

115.    Plaintiff attended two school districts, Kiski and NASD, both of which received federal financial assistance.

116.    The sports Plaintiff participated in were through school districts that received federal financial assistance.

117.    PIAA and WPIAL oversee and dictate athletes' participation in and generates income from recipients of federal financial assistance and, therefore, they both receive, directly or indirectly, federal financial assistance bringing them under the purview of Title VI.

118.    PIAA and WPIAL's arbitrary and capricious decisions and PIAA's retaliation against Plaintiff based on his race constitutes a violation of Title VI.

119.    PIAA and WPIAL each knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

120.    As a direct, proximate, factual, and legal result of being discriminated against on the basis of his race in violation of Title VI, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above.

121.    The individual and collective conduct of PIAA and WPIAL was so intentional, willful, wanton, malicious, outrageous, reckless, and negligent so as to entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendant, Pennsylvania Interscholastic Athletic Association, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League, in an amount in excess of the $75,000, together with punitive damages, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

**COUNT II**

**PLAINTIFF vs DEFENDANTS, PENNSYLVANIA INTERSCHOLASTIC
ATHLETIC ASSOCIATION, INDIVIDUALLY AND T/D/B/A WESTERN
PENNSYLVANIA INTERSCHOLASTIC ATHLETIC LEAGUE, BUCHANAN
INGERSOLL & ROONEY, PC, AND MCNEES WALLACE & NURICK**

**VIOLATION OF THE DRAGONETTI ACT 42 PA. C.S. §8351, ET SEQ./
<u>WRONGFUL USE OF CIVIL PROCEEDINGS</u>**

122.    Plaintiff incorporates herein by reference as though fully set forth at length paragraphs 1 through 121 above.

123.    The trial court determined that PIAA and WPIAL arbitrarily and capriciously discriminated against Plaintiff.

124.    Plaintiff believes PIAA and WPIAL primarily considered and used race as a basis for their arbitrary and capricious discrimination of Plaintiff.

125.    Any reading, analysis, and interpretation of the trial court's opinion should have convinced Defendants, as it would any reasonable parties and counsel, that appealing the trial court's decision would be frivolous.

126.    Instead of licking their wounds, accepting the trial court's well-reasoned decision, and allowing Plaintiff to play high school sports, Defendants filed a frivolous appeal to the Commonwealth Court that was specifically designed and intended to further discriminate against Plaintiff and punish him for having the audacity to challenge the authority of the PIAA and WPIAL.

127.    The Dragonetti Act, 42 Pa. C.S. §8351, et seq. is specifically designed to allow those who have been named in civil actions to sue those who have pursued them if they believe the action was a wrongful use of civil proceedings.

128.   Under the Dragonetti Act, a defendant can be held liable where he "takes part in the procurement, initiation or continuation of civil proceedings against another" and in doing so "acts in a negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa. C.S. §8351(a), (a)(1).

129.   The Dragonetti Act has three elements: (1) the proceedings were decided in favor of the defendant; (2) the lawyer, the law firm, and the client caused those proceedings to be instituted against the defendant without probable cause; and 3) the proceedings were instituted primarily for an improper cause.

130.   Section 8352 of the Dragonetti Act defines probable cause as: A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:  (1)  Reasonably believes that under those facts the claim may be valid under the existing or developing law;  (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or  (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

131.   The Dragonetti Act provides that a plaintiff is entitled to recover for (1) the harm normally resulting from any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings; (2) the expense, including any reasonable attorney's fees, that he has reasonably incurred in defending himself

against the proceedings; (3) any specific pecuniary loss that has resulted from the proceedings; and (4) punitive damages according to law in appropriate cases.

132.    The proceedings were undeniably decided in Plaintiff's favor.

133.    For the reasons set forth above, in appealing the trial court's decision to the Commonwealth Court, Defendants continued civil proceedings against Plaintiff in a negligent manner, without probable cause, and primarily for purposes other than securing a proper adjudication of the matter, namely, to continue their discrimination of Plaintiff and to punish him for having the audacity to challenge the authority of the PIAA and WPIAL.

134.    Under the Dragonetti Act, each of the Defendants are individually liable to Plaintiff.

135.    Defendants' appeal to the Commonwealth Court violated Rule 1023.1, et seq. of the Pennsylvania Rules of Civil Procedure.

136.    For the reasons set forth above, Plaintiff has satisfied and can prove each of the elements of a Dragonetti Act/wrongful use of civil proceedings claim in relation to the initiation and continuation of the frivolous appeal to and resounding defeat in the Commonwealth Court.

137.    Each of the Defendants knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

138.    As a direct, proximate, factual, and legal result of Defendants' violation of the Dragonetti Act and wrongful use of civil proceedings without probable cause and for improper purposes, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above.

139.    Defendants' individual and collective conduct was so intentional, willful, wanton, malicious, outrageous, reckless, and negligent as to entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendants, Pennsylvania Interscholastic Athletic Association, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League, Buchanan Ingersoll & Rooney, PC, and McNees, Wallace, and Nurick, LLC, in an amount in excess of the $75,000, together with punitive damages, attorneys' fees, costs and such other relief as this Honorable Court deems appropriate.

### COUNT III

**PLAINTIFF vs DEFENDANTS, PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INDIVIDUALLY AND T/D/B/A WESTERN PENNSYLVANIA INTERSCHOLASTIC ATHLETIC LEAGUE, BUCHANAN INGERSOLL & ROONEY, PC, AND MCNEES WALLACE & NURICK**

### ABUSE OF PROCESS

140.    Plaintiffs incorporate herein by reference as though fully set forth at length paragraphs 1 through 139 above.

141.    Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process.

142.    To establish a claim for abuse of process, a plaintiff must demonstrate that defendant: (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and that (3) harm has been caused to the plaintiff.

143.    Abuse of process differs from wrongful use of civil proceedings.

144.    An abuse of process claim is the "perversion of legal process" in order to achieve a purpose which is not an authorized goal of the procedure in question.

145.    As exemplified by their illicit attempts to retaliate, coerce, and unduly influence Plaintiff and NASD, Defendants used the entirety of the Hearings, the proceedings before the trial

court, and their frivolous appeal to the Commonwealth Court, to punish Plaintiff for standing up to them and to make an example out of Plaintiff should anyone else stand up to them.

146.    In other words, Defendants wanted to use all the proceedings to ensure that their arbitrary and capricious discrimination against minorities, such as Plaintiff, would continue to go unquestioned.

147.    For the reasons set forth above, in appealing the trial court's decision to the Commonwealth Court, Defendants used a legal process against Plaintiff primarily to accomplish purposes for which the process was designed, namely, to continue their discrimination of Plaintiff and to punish him for having the audacity to challenge the authority of the PIAA and WPIAL.

148.    For the reasons set forth above, Defendants are guilty of abuse of process and each of them are individually liable to Plaintiff.

149.    For the reasons set forth above, Plaintiff has satisfied and can prove each of the elements of an abuse of process claim, starting from the completely unnecessary Hearings which were (1) held because Plaintiff is a minority, and (2) in which Plaintiff's inherent due process rights were stripped of him at the door which continued through their filing of a frivolous appeal to and resounding defeat in the Commonwealth Court.

150.    Each of the Defendants knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

151.    As a direct, proximate, factual, and legal result of Defendants' abuse of process, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above.

152.    Defendants' individual and collective conduct was so intentional, willful, wanton, malicious, outrageous, reckless, and negligent as to entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendants, Pennsylvania Interscholastic Athletic Association, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League, Buchanan Ingersoll & Rooney, PC, and McNees, Wallace, and Nurick, LLC, in an amount in excess of the $75,000, together with punitive damages, attorneys' fees, costs and such other relief as this Honorable Court deems appropriate.

**COUNT IV**

**PLAINTIFF vs DEFENDANT PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INDIVIDUALLY AND T/D/B/A WESTERN PENNSYLVANIA INTERSCHOLASTIC ATHLETIC LEAGUE**

**RECKLESSNESS**

153.    Plaintiff incorporates herein by reference as though fully set forth at length paragraphs 1 through 152 above.

154.    At all times pertinent hereto PIAA and WPIAL had a duty to equally apply the PIAA Bylaws and the Rules to all students without regard to their race.

155.    That duty continued throughout their appeal to the Commonwealth Court.

156.    For the reasons set forth herein, PIAA and WPIAL breached that duty.

157.    At all times pertinent hereto PIAA and WPIAL had a duty to refrain from filing frivolous appeals.

158.    That duty continued throughout their appeal to the Commonwealth Court.

159.    For the reasons set forth herein, PIAA and WPIAL breached that duty.

160.    At all times pertinent hereto, PIAA and WPIAL owed Plaintiff a general duty not to engage in conduct that would place Plaintiff at an unreasonable risk of harm.

161.    For the reasons set forth herein, PIAA and WPIAL breached that duty by causing Plaintiff to suffer an unreasonable risk of harm which he actually suffered.

162.    For the reasons set forth above, PIAA's and WPIAL's individual and collective conduct was reckless.

163.    PIAA and WPIAL each knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

164.    As a direct, proximate, factual, and legal result of PIAA's and WPIAL's recklessness, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above and all of which were reasonably foreseeable under the circumstances.

165.    PIAA's and WPIAL's individual and collective conduct was so intentional, willful, wanton, malicious, outrageous, and reckless as to entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendants, Pennsylvania Interscholastic Athletic Association, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League, in an amount in excess of the $75,000, together with punitive damages, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

## COUNT V

## PLAINTIFF vs DEFENDANTS, BUCHANAN INGERSOLL & ROONEY, PC, AND MCNEES WALLACE & NURICK

## <u>RECKLESSNESS</u>

166.    Plaintiff incorporates herein by reference as though fully set forth at length paragraphs 1 through 165 above.

167.    At all times pertinent hereto BIR and MWN had a duty to refrain from championing PIAA's and WPIAL's discriminatory conduct by filing frivolous appeals.

168.    That duty continued throughout their appeal to the Commonwealth Court.

169.    For the reasons set forth herein, BIR and MWN breached that duty.

170.    At all times pertinent hereto, BIR and MWN owed Plaintiff a general duty not to engage in conduct that would place Plaintiff at an unreasonable risk of harm.

171.    For the reasons set forth herein, BIR and MWN breached that duty by causing Plaintiff to suffer an unreasonable risk of harm which he actually suffered.

172.    At all times pertinent hereto and as attorneys, BIR and MWN had a duty to comply with Rule 1023.1, et seq. of the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Professional Conduct, specifically including Rules 3.1 and 3.4.

173.    For the reasons set forth herein, BIR and MWN failed to comply with and, in fact, violated Rule 1023.1, et seq. of the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Professional Conduct, specifically including Rules 3.1 and 3.4.

174.    For the reasons set forth above, BIR's and MWN's individual and collective conduct was reckless.

175.    BIR and MWN each knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

176.    As a direct, proximate, factual, and legal result of BIR's and MWN's recklessness, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above and all of which were reasonably foreseeable under the circumstances.

177.    BIR's and MWN's individual and collective conduct was so intentional, willful, wanton, malicious, outrageous, and reckless as to entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendants, Buchanan Ingersoll & Rooney, PC and McNees, Wallace, and Nurick, LLC, in an amount in excess of the $75,000, together with punitive damages, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

### COUNT VI

### PLAINTIFF vs DEFENDANTS, PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INDIVIDUALLY AND T/D/B/A WESTERN PENNSYLVANIA INTERSCHOLASTIC ATHLETIC LEAGUE, BUCHANAN INGERSOLL & ROONEY, PC, AND MCNEES WALLACE & NURICK

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

178.    Plaintiff incorporates herein by reference as though fully set forth at length paragraphs 1 through 177 above.

179.    In this day and age, any form of discrimination is extreme and outrageous.

180.    PIAA's and WPIAL's individual and collective conduct was judicially determined to be discriminatory.

181.    BIR and MWN championed, supported, and advanced the PIAA's and WPIAL's discrimination of Plaintiff, generally and specifically by filing a frivolous appeal on their behalf all in an effort to bill and collect outrageous amounts of attorneys' fees and costs which they did.

182.    Under the circumstances and for the reasons set forth herein, Defendants' individual and collective conduct was and a jury will likely agree that it was extreme and outrageous, and it recklessly caused Plaintiff to suffer severe emotional distress.

183.    Each of the Defendants knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

184.    For the reasons set forth above, Defendants' individual and collective conduct was specifically designed and intended to and did inflict severe emotional distress on Plaintiff.

185.    As a direct, proximate, factual, and legal result of Defendants' individual and collective conduct, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above.

186.    Defendants' individual and collective conduct was so intentional, willful, wanton, malicious, outrageous, and reckless as to entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendant Pennsylvania Interscholastic Athletic Association, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League, Buchanan Ingersoll & Rooney, PC, and McNees, Wallace, and Nurick, LLC, in an amount in excess of the $75,000, together with punitive damages, attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

## COUNT VII

## PLAINTIFF vs DEFENDANT, PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INDIVIDUALLY AND T/D/B/A WESTERN PENNSYLVANIA INTERSCHOLASTIC ATHLETIC LEAGUE

## <u>NEGLIGENCE</u>

187.    Plaintiff incorporates herein by reference as though fully set forth at length paragraphs 1 through 184 above.

188.    At all times pertinent hereto PIAA and WPIAL had a duty to equally apply the PIAA Bylaws and the Rules to all students without regard to their race.

189.    That duty continued throughout their appeal to the Commonwealth Court.

190.    For the reasons set forth herein, PIAA and WPIAL breached that duty.

191.    At all times pertinent hereto PIAA and WPIAL had a duty to refrain from filing frivolous appeals.

192.    That duty continued throughout their appeal to the Commonwealth Court.

193.    For the reasons set forth herein, PIAA and WPIAL breached that duty.

194.    At all times pertinent hereto, PIAA and WPIAL owed Plaintiff a general duty not to engage in conduct that would place Plaintiff at an unreasonable risk of harm.

195.    For the reasons set forth herein, PIAA and WPIAL breached that duty by causing Plaintiff to suffer an unreasonable risk of harm which he actually suffered.

196.    For the reasons set forth above, PIAA's and WPIAL's individual and collective conduct was negligent.

197.     PIAA and WPIAL each knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

198.    As a direct, proximate, factual, and legal result of PIAA's and WPIAL's negligence, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above and all of which were reasonably foreseeable under the circumstances.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendant, Pennsylvania Interscholastic Athletic Association, individually and t/d/b/a Western Pennsylvania Interscholastic Athletic League, in an amount in excess of the $75,000, together with attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

## COUNT VIII

### PLAINTIFF vs DEFENDANTS, BUCHANAN INGERSOLL & ROONEY, PC AND MCNEES WALLACE & NURICK

### NEGLIGENCE

199.    Plaintiff incorporates herein by reference as though fully set forth at length paragraphs 1 through 196 above.

200.    At all times pertinent hereto BIR and MWN had a duty to refrain from championing PIAA's and WPIAL's discriminatory conduct by filing frivolous appeals.

201.    That duty continued throughout their appeal to the Commonwealth Court.

202.    For the reasons set forth herein, BIR and MWN breached that duty.

203.    At all times pertinent hereto, BIR and MWN owed Plaintiff a general duty not to engage in conduct that would place Plaintiff at an unreasonable risk of harm.

204.    For the reasons set forth herein, BIR and MWN breached that duty by causing Plaintiff to suffer an unreasonable risk of harm which he actually suffered.

205.    At all times pertinent hereto and as attorneys, BIR and MWN had a duty to comply with Rule 1023.1, et seq. of the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Professional Conduct, specifically including Rules 3.1 and 3.4.

206.    For the reasons set forth herein, BIR and MWN failed to comply with and, in fact, violated Rule 1023.1, et seq. of the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Professional Conduct, specifically including Rules 3.1 and 3.4.

207.    For the reasons set forth above, BIR's and MWN's individual and collective conduct was negligent.

208.    BIR and MWN each knew or should have known that their individual and collective conduct would cause Plaintiff to suffer the injuries, damages, losses, and harm he has suffered and continues to suffer.

209.    As a direct, proximate, factual, and legal result of BIR's and MWN's negligence, Plaintiff has suffered the severe, serious, and potentially permanent injuries, damages, losses, and harm referenced above and all of which were reasonably foreseeable under the circumstances.

WHEREFORE, Plaintiff, Kyrell Hutcherson, demands judgment in his favor and against Defendants, Buchanan Ingersoll & Rooney, PC and McNees, Wallace, and Nurick, LLC, in an amount in excess of the $75,000, together with attorneys' fees, costs, and such other relief as this Honorable Court deems appropriate.

Respectfully Submitted,

**THE FARNETH LAW GROUP, LLC**

By: _/s/ George R. Farneth II_
George R. Farneth II, Esquire
_Attorneys for Plaintiff, Kyrell Hutcherson_

<u>**CERTIFICATE OF SERVICE**</u>

I, George R. Farneth II, Esquire, hereby certify that a true and correct copy of the foregoing

Amended Complaint in Civil Action was served on all counsel through ECF service on January

31, 2024.

**THE FARNETH LAW GROUP, LLC**

By: *_/s/ George R. Farneth II_*
George R. Farneth II, Esquire
445 Fort Pitt Blvd., Suite 160
Pittsburgh, PA 15219
PA ID No.: 53914
Tel.: (412) 863-7092
Cell: (412) 977-7779
Email: grf@farnethlaw.com
*Attorneys for Plaintiff, Kyrell Hutcherson*